## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 36606

STATE OF IDAHO,

      **Plaintiff-Respondent,**

v.

JOHN DOE,

      **Defendant-Appellant.**

)
)
)
)
)
)
)
)
)
)
)
)

**Boise, February 2010 Term**

**2010 Opinion No. 37**

**Filed: March 26, 2010**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Gooding County. Honorable Barry Wood, District Judge; Honorable Mark A. Ingram, Magistrate Judge.

District court's affirmance of the magistrate court's decision, is <u>affirmed</u>.

Capitol Law Group, PLLC, Boise, for appellant. David A. Heida argued.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

J. JONES, Justice.

John Doe appeals the district court's holding that Wendell City Ordinance No. 442 is not facially unconstitutional. We affirm.

### I.
### Facts and Procedural History

John Doe, a minor, was a passenger in a vehicle stopped at 1:30 a.m. for a traffic violation. Doe was supposed to be staying at a friend's house, but sneaked out with two friends to look for a party. Doe was cited for a violation of Wendell City Ordinance No. 442 ("Ordinance"), a curfew ordinance, which provides:

#### SECTION 1. CURFEW HOURS, VIOLATIONS, AND EXCEPTIONS

**A. NIGHT TIME CURFEW:** It shall be unlawful for any minor person under the age of eighteen (18) years to loiter, idle, wander, stroll, play, or otherwise be upon the public streets, highways, roads, sidewalks, alleys, parks, playgrounds, or other public grounds, or public places, building, or other

property generally open to public use, or vacant lots within the City of Wendell, between the hours of 11:00 o'clock p.m. and 5:00 o'clock a.m.

**B. EXCEPTIONS:** The provisions of this section do not apply to a minor accompanied by his or her parents or legal guardians, or where the minor is upon an emergency errand or other legitimate business directed by his or her parents or legal guardian or custodian or school, having in their possession some form of documentation as to the business to be performed.

. . . .

## SECTION 5. PENALTIES

Any person in violation of any section or provision of this ordinance shall be guilty of a misdemeanor and upon conviction thereof shall be punished as provided in Ordinance Number 192 of the City of Wendell, Idaho. Each violation of any section of this ordinance shall constitute a separate offense.

Doe sought to dismiss the citation in juvenile court, asserting the Ordinance was facially unconstitutional. Specifically, Doe argued that the Ordinance was void for vagueness in violation of the Due Process Clause, was overbroad in violation of the First Amendment, denied Doe equal protection of the laws in violation of the Fourteenth Amendment, and denied the fundamental right of a parent to direct the upbringing of his child in violation of the Due Process Clause.[1] The magistrate judge orally denied the constitutional challenge. As a result, Doe made a conditional admission of guilt under the Ordinance and the constitutional challenge was orally certified for appeal to the district court. The district court also orally rejected the constitutional challenge.

Doe appealed, raising the same constitutional challenge and seeking reversal of the district court's order. The appeal was assigned to the Court of Appeals. The Court of Appeals reversed the district court, finding that the Ordinance was unconstitutionally overbroad. The Court of Appeals did not reach the other constitutional issues. This Court then granted the State's petition for review.

## II.
### Issues on Appeal

The following issues are presented on appeal: (1) whether the Ordinance is

---

[1] Doe also asserted that the Ordinance violated similar provisions of the Idaho Constitution. However, Doe has made no showing or any compelling argument concerning how the standards applied by the Idaho Constitution would be applied any differently than those of the U.S. Constitution. In absence of such a showing, this Court normally applies federal constitutional standards. *See State v. Radford*, 134 Idaho 187, 190, 998 P.2d 80, 83 (2000). Accordingly, all issues will be addressed under the U.S. Constitution only.

unconstitutionally overbroad or void for vagueness; (2) whether the Ordinance denies equal protection of the laws; and (3) whether Doe has standing to assert the alleged violation of his parents' rights to direct his upbringing.

## III.
### A.
### Standard of Review

A petition for review of a decision of the Court of Appeals will only be granted "when there are special and important reasons" for review. Idaho App. R. 118(b). When the Supreme Court reviews a case previously decided by the Court of Appeals, "this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *In re Doe*, 144 Idaho 819, 821, 172 P.3d 1094, 1096 (2007). "On appeal of a decision rendered by a district court while acting in its intermediate appellate capacity, the Court directly reviews the district court's decision." *In re Doe*, 147 Idaho 243, 248, 207 P.3d 974, 979 (2009).

This Court freely reviews constitutional questions. *Plummer v. City of Fruitland*, 139 Idaho 810, 812, 87 P.3d 297, 299 (2004). When determining the constitutionality of a city ordinance, the Court will review the ordinance de novo. *Id.* A party challenging an ordinance on constitutional grounds bears the burden of establishing the ordinance's unconstitutionality and is required to "overcome a strong presumption of validity." *State v. Korsen*, 138 Idaho 706, 711, 69 P.3d 126, 131 (2003). We are obligated to attempt to interpret the ordinance in a manner that upholds its constitutionality. *Id.*

### B.
### Overbreadth and Vagueness

Doe argues that his conviction should be reversed because the Ordinance is unconstitutionally overbroad and vague. Doe contends that the Ordinance is overbroad because it prohibits activities that constitute protected speech under the First Amendment without providing an exception for carrying out those activities. Doe points to three portions of the Ordinance he contends are vague: (1) "loiter, idle, wander, stroll, play, or otherwise be upon;" (2) "where the minor is upon an emergency errand or other legitimate business;" and (3) "some form of documentation." Doe does not argue that these provisions are unconstitutional as applied to him, but instead that the Ordinance is unconstitutional on its face because of the inclusion of the challenged phrases. Doe contends that these are imprecise terms that have not been defined, vesting police officers with virtually unfettered discretion to make arrests under the Ordinance

3

and failing to inform the general public of the conduct made criminal. The State contends that Doe should not succeed in his facial challenge because the Ordinance does not reach a substantial amount of protected conduct and is not unconstitutionally vague in all its applications.

It is a key principle of constitutional law "that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973). As a result, a litigant need not be prohibited from any constitutionally protected behavior in order to mount a facial challenge to a legislative measure in order to protect the rights of others not before the court. *Id.* at 612 However, because invalidating an ordinance based on a challenge of one who does not have standing in the traditional sense is "strong medicine," courts should use care in reviewing facial challenges. *Id.* at 613.

Where a facial challenge is made to an ordinance on overbreadth and vagueness grounds, a court must first decide whether the ordinance "reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). If the ordinance does not reach a substantial amount of protected conduct, then the overbreadth challenge will fail. *Id.* A court should then examine the ordinance on the facial vagueness challenge. *Id.* The ordinance will only be found void for vagueness if it is unconstitutionally vague in all its applications. *Id.* at 494–95. Normally, where the complaining party has engaged in conduct that is clearly prohibited by the ordinance, he cannot argue that the ordinance is vague. *Id.* Accordingly, given this structure, the overbreadth challenge will be addressed first and then the vagueness challenge.

**1.**
**Overbreadth**

Doe argues that the Ordinance is facially overbroad. An ordinance may be facially overbroad if it: (1) seeks to regulate only constitutionally protected speech; (2) impermissibly burdens innocent associations; or (3) places regulations on "the time, place, and manner of expressive or communicative conduct," particularly where the restriction "delegate[s] standardless discretionary power to local functionaries, resulting in virtually unreviewable prior restraints on First Amendment rights." *Broadrick*, 413 U.S. at 612–13. The review of an

4

ordinance varies depending on the type of conduct prohibited or criminalized by the enactment.

In this case, Doe argues that the Ordinance has incidental effects on expressive conduct and innocent associations rather than directly prohibiting protected speech. "[O]verbreadth scrutiny has generally been somewhat less rigid in the context of statutes regulating conduct in the shadow of the First Amendment rather than pure speech, but doing so in a neutral, noncensorial manner." *Id.* at 614. Where conduct, as well as speech, is regulated by a statute and the State has a legitimate interest in regulating the conduct in question, there must be a demonstration of real and substantial overbreadth in order for a facial challenge to be successful. *Id.* at 615. The party arguing overbreadth bears the burden of showing "'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)). This showing requires a demonstration that the law prohibits a substantial amount of protected activity in relation to the law's legitimate sweep. *Id.* at 118–19 (quoting *Broadrick*, 413 U.S. at 615). This showing will invalidate the enactment as a whole "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id.* at 119 (quoting *Broadrick*, 413 U.S. at 613). Overbreadth is not substantial if, despite the fact that some constitutionally protected conduct is proscribed, the statute covers a wide range of conduct that is easily identifiable and within the city's power to prohibit. *State v. Korsen*, 138 Idaho 706, 714, 69 P.3d 126, 134 (2003). Where an ordinance proscribes protected speech only to some unknown extent, a court cannot justify invalidating the ordinance. *Id.* at 713, 69 P.3d at 133.

In *Korsen*, this Court overruled the district court's finding that Idaho Code section 18-7008(8), which creates criminal liability for trespassing when a party refuses to vacate real property after being asked to depart by the owner or the owner's authorized agent, was unconstitutionally overbroad on its face. *Id.* at 710, 69 P.3d at 130. Korsen was charged with a violation of section 18-7008(8) when he refused to leave the offices of the Idaho Department of Health and Welfare after being asked to do so by the regional director. *Id.* This Court rejected the district court's analysis because the district court failed to apply a significantly stringent standard. *Id.* at 715, 69 P.3d at 135. The district court relied on one hypothetical situation, that the trespassing statute could potentially be used to keep citizens from engaging in a dialogue with legislators at the State Capitol, as support for its finding of unconstitutional overbreadth. *Id.*

5

We found that analysis to be flawed because it did not demonstrate "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court . . . ." *Id.* (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801–02 (1984)). The Court also found fault with the district court's failure to consider the statute's constitutional applications to situations involving private property and those situations in which no protected speech was implicated. *Id.* The Court noted that these forgotten considerations were exemplified by Korsen's conduct because any constitutionally protected business he had on the premises was at an end well before his refusal to leave and subsequent arrest. *Id.* at 715–16, 69 P.3d at 135–36. The *Korsen* opinion indicates that this Court will consider all aspects of the statute and its application in determining whether it is unconstitutionally overbroad on its face. In addition, the Court will construe the terms of the statute in order to determine the scope of protected conduct that might be affected and review U.S. Supreme Court precedent to guide our determination of conduct that might constitutionally be criminalized. *State v. Poe*, 139 Idaho 885, 892–903, 88 P.3d 704, 711–22 (2004). Similar analysis will be undertaken here.[2]

The Ordinance prohibits a minor from being in public from 11:00 p.m. till 5:00 a.m. unless one of the exceptions to the ordinance is applicable. A minor may be in public during those hours if: (1) he is accompanied by a parent or legal guardian; or (2) the minor is on an "emergency errand or other legitimate business" at the direction of his "parents or legal guardian or custodian or school" and has "some form of documentation as to the business to be performed." Doe argues that the broad reach and narrow exceptions of the Ordinance prohibit protected conduct including attending religious exercises, town hall meetings, and school events. Accordingly, Doe argues that the Ordinance constitutes an impermissible time, place, and manner restriction on speech.

"Regulations that burden speech incidentally or control the time, place, and manner of expression, must be evaluated in terms of their general effect." *United States v. Albertini*, 472 U.S. 675, 688–89 (1985). An incidental burden on speech may be justified if "[1] it is within the

---

[2] In *State v. Poe*, the Court, in a 3-2 split, found a statute to be overbroad. *Id.* The Court found Idaho Code section 18-6409 unconstitutionally overbroad on its face and applied a limiting construction in order to remedy the overbreadth, striking section 18-6409(3) from the statute. *Id.* at 902, 88 P.3d at 721. However, *Poe* differs from this case because the challenged portion of Idaho Code section 18-6409 dealt only with spoken words, meaning that it could be found constitutionally invalid if it applied to speech protected by the First Amendment, a lower standard than that required for expressive conduct statutes. *Id.* at 892, 88 P.3d at 711.

constitutional power of the Government; [2] it furthers an important or substantial governmental interest; [3] the governmental interest is unrelated to the suppression of free expression; and [4] the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968). When a government regulation satisfies the *O'Brien* test, it constitutes a reasonable time, place, and manner restriction and will not be invalidated for its incidental effects on protected conduct. *Taxpayers for Vincent*, 466 U.S. at 808. The Ordinance will be analyzed according to the *O'Brien* test.

**a.**

The City of Wendell is empowered to enact ordinances by article XII, section 2 of the Idaho Constitution. Under that provision, "[a]ny county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general law." Idaho Const. art. XII, § 2. This Court has found that there are three general restrictions that must be met by an ordinance enacted under this provision: (1) it must be confined to the territorial limits of the enacting body; (2) it must not conflict with the general laws of the State; and (3) it must not be an unreasonable or arbitrary enactment. *Hobbs v. Abrams*, 104 Idaho 205, 207, 657 P.2d 1073, 1075 (1983).

In this case, Doe does not argue, nor does the Ordinance indicate, that it extends beyond the territorial limits of the City of Wendell. In fact, the plain language of the Ordinance provides that it is only in effect in the city. In addition, Doe has pointed to no other laws of the State of Idaho that conflict with the Ordinance. In fact, juvenile curfew ordinances are specifically contemplated by legislative enactment. Idaho Code section 32-1301 empowers municipalities to impose criminal sanctions on parents for failure to supervise their children. I.C. § 32-1301. Section 32-1301(2)(c) provides that a parent automatically commits the offense of failure to supervise a child under sixteen if that child violates a curfew ordinance enacted under local law. I.C. § 32-1301. This provision indicates that the City of Wendell not only has the power to enact curfew ordinances, but is expected to do so by the Legislature.

Doe has in fact recognized that municipalities have a legitimate interest in enacting a juvenile curfew ordinance in order to promote the safety and welfare of their citizens and prevent juvenile criminal activity and victimization. Doe's challenge to the Ordinance is focused on the fact that it does not provide exceptions for protected conduct that may fall within its ambit. This,

without more, is insufficient to show that the Ordinance is unreasonable or arbitrary. As such, the Ordinance is a valid enactment within the power of the City of Wendell, meeting the first prong of the *O'Brien* test.

**b.**

Municipalities have a substantial interest in preventing juvenile crime and victimization. *See, e.g., Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 947 (9th Cir. 1997); *State v. J.P.*, 907 So.2d 1101, 1118 (Fla. 2004). There has been no showing that the Ordinance does not further those interests. Also, as pointed out in Doe's brief, the U.S. Supreme Court has recognized that the physical and psychological well-being of minors is a compelling government interest. *See Sable Commc'ns v. Fed. Commc'n Comm'n*, 492 U.S. 115, 126 (1989). While the stated purpose of the Ordinance is not specific to these particular interests, such interests are encompassed within its stated purpose, which is to promote the welfare and safety of the public.[3] There is no requirement that a substantial interest sufficient to support the constitutionality or validity of an ordinance must appear on the face of the enactment. Consequently, the Ordinance serves a substantial government interest.

**c.**

A ban on the means of expression is not a suppression of the expression itself for the purpose of the *O'Brien* standard. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 292 (2000). In *Pap's A.M.*, the U.S. Supreme Court found that a ban on public nudity, even though likely directed at nude dancing, had a valid, content-neutral purpose in prohibiting the secondary effects of nude dancing. *Id.* at 291 The purpose was content neutral, despite the fact that nude dancing is a protected form of expression. *Id.* The Court found that the ban was not directed at expression because it banned all public nudity, not simply nude dancing. *Id.*

Although the Ordinance is quite different from the nudity ban in *Pap's A.M.*, the rationale behind them is the same. The Ordinance bans all juveniles from being in public between the hours of 11:00 p.m. to 5:00 a.m., unless they fall within one of the exceptions to the statute. While this curfew may have the practical effect of preventing certain forms of expression during curfew hours, the Ordinance, much like the ban in *Pap's A.M.*, cannot be said to directly target that expression because it is targeted at all juvenile activity, both protected and nonprotected. As

---

[3] One of the stated purposes of the Ordinance is "to provide order and promote the safety and welfare of the residents of the City of Wendell, Idaho."

8

such, the government interest in keeping juveniles off the streets is likewise unrelated to the suppression of expression.

### d.

Where a restriction incidentally impacts protected conduct rather than speech, and the restriction is content neutral, there is no requirement that the restriction be enacted through the least restrictive means. *Id.* at 301–02. However, the restriction must be no greater than necessary to carry out the governmental interest. *Id.* at 301. In conducting the subjective inquiry into whether the Ordinance meets that requirement, it is instructive to view other cases where the U.S. Supreme Court has applied the *O'Brien* test, as well as cases from other jurisdictions where the test has been applied to curfew ordinances similar to the one in this case.

In *Pap's A.M.*, the Court found that the ban on appearing nude in public was no greater than necessary to carry out the city's interest in preventing the harmful secondary effects of public nudity because it only regulated conduct and had a *de minimis* effect on the dancers' ability to convey their erotic message because they were still allowed to dance in minimal attire. *Id.* at 301. A similar result was reached in *Grayned v. City of Rockford*, where the Court upheld a city anti-noise ordinance that prohibited a person from willfully making a noise or diversion that disturbs or tends to disturb the peace or good order of the school session while on grounds adjacent to a building in which a school was in session. 408 U.S. 104, 110–12 (1972). The Court's holding was based on the city's important interest in preventing the disruption of school activities. *Id.* at 118–19. The Court found that even though the ordinance prohibited speech, it only prohibited speech necessary to preserve the integrity of the educational environment by limiting the prohibition to "conduct which disrupts or is about to disrupt normal school activities." *Id.* at 119. The same result was reached in *Clark v. Community for Creative Non-Violence*, where the Court found that the incidental impact of a public park's overnight sleeping ban on a planned demonstration did not render the statute overbroad. 468 U.S. 288, 296–97 (1984) ("It is also apparent to us that the regulation narrowly focuses on the Government's substantial interest in maintaining the parks . . . . The sleeping ban, if enforced, would thus effectively limit the nature, extent, and duration of the demonstration and to that extent ease the pressure on the parks. . . . [I]t is evident from our cases that the validity of this regulation need

not be judged solely by reference to the demonstration at hand.").[4]

The Supreme Court invalidated a local ordinance regulating the screening of drive-in movies on overbreadth grounds in *Erznoznik v. City of Jacksonville*. 422 U.S. 205, 213 (1975). In that case, a local ordinance banned the screening of drive-in movies within view of a public street or area if the movie contained nudity. *Id.* at 206–07. The stated interest behind the ordinance was to protect minors from public displays of nudity. *Id.* at 207. The Court found the ordinance was not limited to that interest because it prohibited the display of all nudity and not simply sexually explicit or obscene nudity and noted that the First Amendment did not allow the limitation of information to minors in that manner. *Id.* at 213. Apart from *Erznoznik*, however, it is difficult to find cases where the Court has invalidated statutes and ordinances that do not have speech-content regulation as their purpose. This is explained by the Court's statements in *Texas v. Johnson* concerning the "relatively lenient" or "less demanding" standards of review under the *O'Brien* test. 491 U.S. 397, 407 (1989).[5] Consequently, given this statement, it appears that the Ordinance must be substantially far afield from its stated purpose in order to be invalid under *O'Brien*.

The Fifth Circuit Court of Appeals invalidated a curfew ordinance on overbreadth grounds in *Johnson v. City of Opelousas*. 658 F.2d 1065, 1071–74 (5th Cir. 1981). In that case, an ordinance substantially similar to the ordinance at issue here was declared unconstitutionally overbroad because the ordinance had a substantial effect on a number of constitutionally protected activities. *Id.* However, a few characteristics of *Johnson* should be noted to determine its persuasive authority. First, although similar, the ordinance in *Johnson* did not allow parents or other child custodians to authorize a child's presence in public after hours with a permission slip or some similar documentation. *Id.* at 1071. Second, the court in *Johnson* used some amalgam of the *O'Brien* test, neither specifically analyzing all of its factors nor focusing on the state's interest in enforcing the ordinance. *Id.* at 1071–74. Finally, the court impermissibly considered the right to interstate travel as part of the overbreadth balancing, even though overbreadth is

---

[4] The holding of *Clark* also disposes of one of the elements of time, place, and manner review, not dealt with by *O'Brien*, which is a requirement that the regulation leave open alternative channels of communication. Doe argues that, because the Ordinance prohibits all juvenile speech for one-quarter of the day, it fails to meet this requirement. This argument is foreclosed by the rationale of *Clark* in which the Court found a complete nighttime ban on conduct, which prohibited expressive conduct, left open alternative channels of communication. *Id.* at 293.

[5] The Court makes similar comments about the review of time, place, and manner restrictions, noting that the tests are essentially one and the same. *Id.*

limited to speech concerns. *Id.*[6]

Similar infirmities are presented by the analysis in *Nunez*. In that case, the Ninth Circuit found a San Diego juvenile curfew ordinance invalid on several grounds, including overbreadth. 114 F.3d at 949–51. The ordinance was also similar to the one at issue here, the key difference being the "legitimate business" exception of the Ordinance, which was not included in the San Diego ordinance. *Id.* at 938. Further, although the Ninth Circuit articulates the factors of the *O'Brien* test, it does not apply *O'Brien*. *Id.* at 949–51. The court simply declares the ordinance unconstitutionally overbroad because of its findings that the ordinance restricts any and all access to a public forum. *Id.* at 951. In fact, it seems that the Ninth Circuit's finding of overbreadth is based on a finding that the ordinance was directed at expression rather than having an incidental effect on expression that is broader than necessary in order to carry out the governmental interest in question. *See id.* ("[T]he San Diego ordinance 'is directed narrowly and specifically at expression or conduct commonly associated with expression.'"). This finding seems contradictory to the obvious and stated purpose of such an ordinance, to keep children off the street at night for their own well-being and for the health and safety of the populous at large. There is no indication from the evidence considered in the *Nunez* opinion that the San Diego City Council had the prevention of juvenile speech in mind when it enacted its ordinance. Accordingly, the *Nunez* opinion is of questionable persuasive value, despite Doe's extensive reliance on it.

The Ordinance does not reach an amount of conduct that is greater than necessary to further the City of Wendell's interests. As noted above, the City of Wendell has an interest in the physical and psychological well-being of minors, which is a compelling government interest, and the Ordinance appears to further that interest.[7] Further, the City has a compelling interest in ensuring the health and safety of its citizens. The Ordinance, as opposed to those presented in *Nunez* and *Johnson*, contains a provision allowing a child to be in public without the presence of a parent or custodian so long as the child has some form of documented authorization. Doe has

---

[6] This limitation was recognized by the Ninth Circuit in *Nunez*. 114 F.3d at 949 n.11 (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

[7] The U.S. Supreme Court has also noted that where the following three factors are in play, the analysis of the constitutional rights of minors may not be as stringent as the analysis of the constitutional rights of adults. *Bellotti v. Baird*, 443 U.S. 622, 634 (1979). The factors include: (1) the peculiar vulnerability of children; (2) their inability to make critical decisions in an informed, mature manner; and (3) the importance of the parental role in child rearing. *Id.*

11

not shown that this authorization would not allow children to assert their First Amendment rights. Doe has also failed to show that the Ordinance would reach constitutionally protected conduct in a substantial portion of the cases where it would apply. In many instances, a juvenile cited under the Ordinance, like Doe, would be out looking for a party or engaging in some other nonprotected activity, which is clearly prohibited.

Furthermore, although Doe argues that the Ordinance must have a First Amendment exception, given the U.S. Supreme Court's statements concerning the laxity of the *O'Brien* test, the Ordinance does not have to be enacted through the least restrictive means necessary to further the compelling governmental interest. Although an ordinance may prohibit some forms of First Amendment expression, that prohibition is insufficient to render it unconstitutionally overbroad. The Ordinance seeks to keep children off the streets during the late hours of the night, presumably to allow increased parental supervision and to prevent juvenile crime and other dangers the juvenile may encounter. Allowing too many exceptions to the Ordinance, even though allowing greater freedom to exercise protected rights, would potentially undermine the purpose of the Ordinance. Accordingly, the Ordinance is not overbroad in relation to the interest it furthers.

In addition, the Ordinance vests parents with the right to control whether their children engage in protected conduct through the authorized legitimate business or emergency errand exception. The exception allows a parent to authorize a child to engage in virtually any legal activity, so long as the authorization is documented in some form. As such, the limitation on conduct largely comes from the parent rather than a state actor, meaning that any burden on protected rights are derived from an unchallengeable source. Finally, Doe's arguments for overbreadth are largely based on a few hypotheticals without any actual showing of infringement of rights or the danger of infringement of rights. As this Court noted in *Korsen*, showing some hypothetical situation where First Amendment rights could be infringed is insufficient support for an overbreadth argument. As such, we find that the Ordinance does not impact more conduct than necessary to carry out its purpose.

### e.

Because the Ordinance satisfies all prongs of the *O'Brien* test, it is a reasonable time, place, and manner restriction under *Pap's A.M.* In addition, Doe has failed to show that it impacts a substantial amount of protected conduct. As a result, we find that the Ordinance is not

unconstitutionally overbroad.

## 2.
## Vagueness

In order to comply with due process, a criminal statute must define behavior that constitutes a violation of that statute "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Another concern articulated by the Supreme Court is that "where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,'" it may chill the exercise of constitutionally protected activity. *Grayned*, 408 U.S. at 109 (quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964)). The Court has recognized that the more important concern is the provision of concrete guidelines to police officers and prosecutors in order to avoid arbitrary and discriminatory enforcement of penal laws. *Id.* The Court notes that "lawmaking [should not be entrusted] 'to the moment-to-moment judgment of the policeman on his beat.'" *Kolender*, 461 U.S. at 360 (quoting *Smith v. Goguen*, 415 U.S. 566, 575 (1974)). Where it is clear what an ordinance prohibits, "mathematical certainty" or "meticulous specificity" of language is not required, allowing for "flexibility and reasonable breadth." *Grayned*, 408 U.S. at 110.

To succeed on a facial vagueness challenge, the challenged ordinance must be shown to be "impermissibly vague in all its applications." *Hoffman Estates*, 455 U.S. at 497. If the law interferes with the rights of speech or association, a more stringent vagueness test should be applied. *Id.* at 499. The test for vagueness is also more stringent in a case where criminal sanctions are imposed for violation of the ordinance. *Id.* at 500. We previously adopted a similar standard in *Korsen*, noting that "in a facial challenge to a legislative enactment [on vagueness grounds], 'the challenger must establish that no set of circumstances exists under which the Act would be valid.'"[8] 138 Idaho at 712, 69 P.3d at 132 (quoting *Salerno*, 481 U.S. at 745).[9]

---

[8] The *Korsen* standard, although adopted from *Hoffman Estates*, seems directly contradictory to the statement in *Hoffman Estates* that a facial challenge cannot succeed where the party bringing the challenge engaged in conduct clearly proscribed by the ordinance. 455 U.S. at 494–95. Construing the two statements together, a facial challenge could never succeed where the party bringing the challenge has been charged under the statute and cannot make an as applied challenge. Under that standard, no facial challenge could succeed in this case.

[9] In holding that the trespassing statute in *Korsen* was not unconstitutionally vague, this Court noted:

The statute makes no distinction between private and public property. Furthermore, the statute informs the public of the prohibited conduct, that is, remaining willfully on property belonging to another after having been asked to leave. Therefore, the statute gives fair notice of the conduct that

Doe argues that the U.S. Supreme Court's decision in *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), is controlling because the Court found language similar to that used in the Ordinance to be unconstitutionally vague. *Papachristou* and other similar cases are distinguishable from the case at bar. The ordinance in *Papachristou* was based upon a class of old English vagrancy ordinances that criminalized activities such as "wandering or strolling around from place to place without any lawful purpose or object." *Id.* at 158.[10] The Court declared the statute invalid because, based on the huge class of undefined offenses and classes of persons subject to arrest under the statute, it allowed the police virtually unfettered discretion to arrest anyone in any situation. *Id.* at 170. The Court noted "[i]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Id.* at 165 (quoting *United States v. Reese*, 92 U.S. 214, 221 (1875)).

The Court reached a similar result in *Kolender*, where it invalidated a California loitering statute. 461 U.S. at 353. In that case, the statute provided that anyone "who loiters or wanders upon the streets or from place to place without apparent reason . . . and who refuses to identify himself . . . when requested by any peace officer to do so, if the surrounding circumstances are such as to indicate to a reasonable man that the public safety demands such identification," may be arrested. *Id.* at 354. The statute was subject to a limiting construction by the California Court of Appeals, which noted that identification meant that an individual had to provide "'credible

---

is made criminal by the statute. Similarly, the core of circumstances to which the trespassing provision unquestionably applies is the willful refusal to leave the premises after having been asked to do so by one in authority. The statute does not allow for unbridled discretion in police enforcement. Indeed, the police have no discretion when enforcing the statute on any type of property; any person who refuses to leave after receiving a warning is subject to arrest.

*Id.* at 713, 69 P.3d at 133.

[10] The ordinance at issue in *Papachristou* read as follows:

Rogues and vagabonds, or dissolute persons who go about begging, common gamblers, persons who use juggling or unlawful games or plays, common drunkards, common night walkers, thieves, pilferers or pickpockets, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses, or places where alcoholic beverages are sold or served, persons able to work but habitually living upon the earnings of their wives or minor children shall be deemed vagrants and, upon conviction in the Municipal Court shall be punished as provided for Class D offenses.

*Id.*

14

and reliable' identification when requested by a police officer who has reasonable suspicion of criminal activity sufficient to justify a *Terry* detention." *Id.* at 356. Despite the limiting construction, the Court found that the identification requirement vested the police with virtually unfettered discretion because the statute did not inform the ordinary citizen what constituted "credible and reliable identification." *Id.* at 358. This holding was based, in part, on a finding that a suspect violated the statute unless the questioning officer determined that the identification was reliable. *Id.* at 360.

The question presented in this case is much closer than that in either *Papachristou* or *Kolender*. Doe points to three portions of the Ordinance that he contends are vague; the language: (1) "loiter, idle, wander, stroll, play, or otherwise be upon;" (2) "where the minor is upon an emergency errand or other legitimate business;" and (3) "some form of documentation." The first challenged phrase, although using archaic language similar to that struck down in *Papachristou*, plainly prohibits a specified class of conduct when taken in context. The first phrase, when read as a whole, provides:

> It shall be unlawful for any minor person under the age of eighteen (18) to loiter, idle, wander, stroll, play, or otherwise be upon the public streets, highways, roads, sidewalks, alleys, parks, playgrounds, or other public grounds, or public places, buildings, or other property generally open to public use, or vacant lots within the City of Wendell, between the hours of 11:00 o'clock p.m. and 5:00 o'clock a.m.

While there is no argument that much of the language used in the Ordinance is redundant, unnecessary, and potentially confusing, the intent of the Ordinance and what is prohibited by this section are clear—no minor is to be in a public place within the City of Wendell between the hours of 11:00 p.m. and 5:00 a.m. Consequently, there are no discretionary calls to be made by an officer in this context, nor does it appear that a reasonable person would not know what conduct is prohibited by the Ordinance. This is contrast to *Papachristou* and *Kolender* where the scope of the prohibition was subject to question.

Doe also relies on the Ninth Circuit's determination that the language "loiter, idle, wander, stroll, or play" in a curfew statute was unconstitutionally vague. *Nunez*, 114 F.3d at 938, 940–43. This reliance is misplaced because the Wendell ordinance also contains the phrase "or otherwise be upon," indicating that no public presence is allowed no matter what activity is undertaken during the specified time period. This conclusion is supported by the Ninth Circuit's finding that the language was vague because it meant something other than mere presence—

15

exactly what is proscribed by the Ordinance. *Id.* This finding is also in line with this Court's duty to produce a reasonable construction of a statute or ordinance that renders it constitutionally definite. *Korsen*, 138 Idaho at 711, 69 P.3d at 131. Accordingly, we find that the "loiter, idle, wander, stroll, play, or otherwise be upon" language is not unconstitutionally vague.

The determination of whether the "where the minor is upon an emergency errand or other legitimate business" and "some form of documentation" provisions are vague is a closer question. In order to determine whether these provisions are vague, this Court will first look to the plain meaning of each. Because the other two challenged provisions are part of the same clause, they should be construed together. "Emergency" is defined as "an unforeseen combination of circumstances or the resulting state that calls for immediate action, . . . a pressing need." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 741 (Philip Babcock Gove et al. eds., 1966). "Errand" is defined as "a trip made in order to deliver a message or purchase or attend to something," "the object or purpose of a short trip," or "a service, favor, or piece of business undertaken for another." *Id.* at 772. "Legitimate" is defined as "following in logical sequence: reasonable." *Id.* at 1291. Finally, "business" in this context is defined as "an activity engaged in toward an immediate specific end . . . : task, chore, mission, assignment." *Id.* at 302. While there are multiple definitions for each of the above terms, it is the province of this Court, where possible, to apply a reasonable limiting construction to legislative measures in order to avoid facial unconstitutionality. *See Hicks*, 539 U.S. at 119.

The challenged provision as a whole provides:

> The provisions of this section do not apply . . . where the minor is upon an emergency errand or other legitimate business directed by his or her parents or legal guardian or custodian or school, having in their possession some form of documentation as to the business to be performed.

As evidenced by the definitions above, "emergency errand" appears to mean a trip made to attend to something that arose unexpectedly and which calls for immediate action. The use of the term "emergency" indicates that this is not simply a benign trip to the corner store, but something akin to seeking medical attention for a sudden injury. Further, the phrase "legitimate business" appears to mean any reasonable activity authorized by a parent, guardian, custodian, or school under the circumstances. In addition, because both emergency errands and legitimate business require parental authorization, together they form a class of conduct that essentially authorizes a minor to engage in any legal activity, so long as it is authorized by one of the

16

authorities in the ordinance. Thus, we find that if the minor is in possession of documentation from one of the specified authorities and is engaged in the activity permitted by that document, he or she is engaged in legitimate business or an emergency errand. The documentation must simply reflect that it was issued by one of the authorized authorities and actually authorizes the activity undertaken by the juvenile.

Furthermore, given the fact that the Ordinance clearly provides that minors are not to be in public between the hours of 11:00 p.m. and 5:00 a.m. unless they come within one of the exceptions, Doe engaged in clearly proscribed conduct. As such, much like the defendant in *Korsen*, where the arrest itself was the result of clearly proscribed behavior, Doe's facial challenge must fail; thus, we find the Ordinance sufficiently definite in its terms to survive Doe's vagueness challenge.

## C.
## Doe's "Equal Protection" Claim

Doe argues that the ordinance is unconstitutional because it denies him equal protection of the laws in violation of the Fourteenth Amendment; however, his basis for this claim is unclear. Doe's apparent justification for this challenge is based on its restriction of a minor's right of free movement. This theory appears to be drawn from the *Nunez* case, where the Ninth Circuit found that because age was not a suspect classification, the only way strict scrutiny review could apply would be through infringement on the fundamental right of free movement. 114 F.3d at 944. While this is true, it is incorrect to label this analysis as an equal protection analysis. Instead, the issue should be approached as a substantive due process issue because it involves the potential denial of fundamental rights.

The Due Process Clause provides heightened protection against government interference with fundamental rights and liberties. *Washington v. Glucksberg*, 512 U.S. 702, 720 (1997). In addition to the freedoms explicitly protected by the Bill of Rights, the U.S. Supreme Court has recognized that other rights may be fundamental and subject to heightened scrutiny. *Id.* In order to determine whether a right is fundamental, a two-step analysis is undertaken. *Id.* First, the right must be shown objectively to "'be deeply rooted in this Nation's history and tradition' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed,'" *Id.* at 720–21 (quoting *Moore v. City of E. Cleveland*, 431 U.S. 494, 503 (1977); *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). "Second, [the Court has] required, in

17

substantive-due-process cases, a 'careful description' of the asserted fundamental liberty interest." *Id.* In determining whether a right is fundamental, "[o]ur Nation's history, legal traditions, and practices thus provide the crucial 'guideposts for responsible decisionmaking.'" *Id.* (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)).

The Ninth Circuit based its finding of a fundamental right to travel on a few lines in the U.S. Supreme Court's opinion in *Papachristou*, in which the Court stated: "[T]hese activities are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity." 405 U.S. at 164; *Nunez*, 114 F.3d at 944. By "these activities," the Court was referring to walking, strolling, idling, wandering, or loafing, from which the Ninth Circuit concluded there was a fundamental right to freedom of movement. The only other context where the Court has examined movement as a fundamental right is in the context of travel. *See Shapiro v. Thompson*, 394 U.S. 618, 629 (1969) ("Our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.").

The Supreme Court has refused to draw a distinction between intrastate and interstate travel. *See Mem'l Hosp. v. Maricopa County*, 415 U.S. 250, 255–56 (1974) ("Even were we to draw a constitutional distinction between interstate and intrastate travel, a question we do not now consider . . . ."). The *Memorial Hospital* statement seems to be a departure from the Court's earlier position in *United States v. Wheeler*, in which the Court stated:

> In all the states, from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective states, to move at will from place to place therein, and to have free ingress thereto and egress therefrom, with a consequent authority in the States to forbid and punish violations of this fundamental right.

254 U.S. 281, 293 (1920). However, the *Wheeler* decision was later limited to its facts in *Guest v. Georgia*, 383 U.S. 745, 759 n.16 (1966). Further, language in *Jones v. Helms* recognizes the power of the State to limit travel, directly contradicting *Wheeler*. 452 U.S. 412, 419 (1981) ("The right of the citizen to migrate from state to state which, . . . is shown by our precedents to be one of national citizenship, is not, however, an unlimited one. In addition to being subject to all

18

constitutional limitations imposed by the federal government, such citizen is subject to some control by state governments.") (quoting *Edwards v. California*, 314 U.S. 160, 184 (1941) (Jackson, J., concurring)). Consequently, although the Ninth Circuit assumes that all freedom of movement is a fundamental right, there may in fact be a difference in the treatment of different types of movement, depending on their nature. The issue is far from clear.

Further, even if movement is a fundamental right, the scope of protection of the rights afforded to juveniles is not always coextensive with the protection afforded the rights of adults. For example, in *Schall v. Martin*, the Supreme Court noted that "[t]he State has 'a parens patriae interest in preserving and promoting the welfare of the child.'" 467 U.S. 253, 263 (1984) (quoting *Santosky v. Kramer*, 455 U.S. 745, 766 (1982)). As a result of this interest, "although children generally are protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for 'concern, . . . sympathy, and . . . paternal attention.'" *Bellotti*, 443 U.S. at 635 (quoting *McKeiver v. Pennsylvania*, 403 U.S. 528, 550 (1966) (plurality opinion)). In addition, "[s]tates validly may limit the freedom of children to choose for themselves in the making of important, affirmative choices with potentially serious consequences . . . . [because] minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them." *Id.* It is common for states to vindicate this interest by requiring parental consent before minors may engage in activities that could be detrimental to them. *Id.* at 367. *Bellotti* is a prime example of this interest, as it holds that the fundamental right to control one's own procreative activities was outweighed by the State's interest in protecting minor's from potentially detrimental action, resulting in a finding that a parental notice requirement for abortions was constitutional. *Id.* at 649.

Informed by the nature of the right at issue and the treatment of that right when exercised by a minor, this Court must determine whether infringement of the right of movement by the Ordinance is sufficiently justified by the City of Wendell's interest in enacting a juvenile curfew ordinance. Assuming arguendo that the right to all forms of travel is a fundamental right, the Ordinance should be subjected to strict scrutiny. "Unquestionably . . . a government practice or statute which restricts 'fundamental rights' . . . is to be subjected to 'strict scrutiny' and can be justified only if it furthers a compelling government purpose and, even then, only if no less restrictive alternative is available." *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 357

(1979). However, because the Ordinance is targeted at juveniles, the principles articulated above concerning the State's interest in the protection of children must also be considered.

Doe has recognized, as have courts that have dealt with juvenile curfews, that municipalities have a substantial interest in preventing juvenile crime and victimization, along with preserving the health and safety of their citizens. *See, e.g., Nunez*, 114 F.3d at 947. Also, as pointed out in Doe's brief, the U.S. Supreme Court has recognized that the physical and psychological well-being of minors is a compelling government interest. *See Sable Commc'ns*, 492 U.S. at 126. Consequently, there is no serious doubt that the government has a compelling interest; instead, Doe argues that the Ordinance is not the least restrictive means of carrying out that interest. As indicated by *Maricopa County, Jones*, and *Wheeler*, the U.S. Supreme Court has not clearly defined the contours of the right to travel other than finding that there is a right to interstate travel. Since the Court has not clearly articulated a right to intrastate travel, the possible impact of the Ordinance on intrastate movement cannot be said to violate the narrow-tailoring requirement. Further, given the substantial State interest in preventing juveniles from making decisions that could be detrimental to their growth and development, the breadth of the Ordinance is the most effective means of effectively protecting juveniles. The Ordinance already allows parents to exempt their children from the Ordinance when they determine that the children have legitimate business during curfew hours. This is consistent with the *Bellotti* recognition that the State may work together with parents in order to protect children from harm. Accordingly, we find that the Ordinance is enacted through the least restrictive means necessary to vindicate the government interest at issue. As a result, the Ordinance does not result in the deprivation of a fundamental right.

## D.
### Standing to Assert a Parental Liberty Interest

Doe also argues that the curfew statute is unconstitutional because it infringes on parents' liberty interest in directing the upbringing of their children.[11] However, Doe's challenge, based on his parents' liberty interest in controlling his upbringing, must be dismissed for lack of standing. Standing is an issue over which this court exercises free review. *Citibank (South Dakota), N.A. v. Carroll*, 148 Idaho 254, 257, 220 P.3d 1073, 1076 (2009). The issue of whether

---

[11] In making this argument, Doe overlooks the fact that the Ordinance vests the parents with broad authority to exempt their children from its coverage.

20

a party has standing to assert a particular claim should be resolved before the merits of the claim are reached. *Id.* at 259, 220 P.3d at 1078.

Courts must hesitate before resolving the rights of those not parties to litigation. *Singleton v. Wulff*, 428 U.S. 106, 113 (1976). Even though a potentially illegal action may affect the litigant as well as a third party, the litigant may not rest his claims on the rights or legal interests of the third party. *Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990). A party challenging the constitutionality of a statute must not only demonstrate some injury from the unconstitutional aspect of the statute, but also that he is in the class of persons protected by that constitutional interest. *Heald v. Dist. of Columbia*, 259 U.S. 114, 123 (1922). This requirement is based on the presumption that the third parties themselves are the best proponents of their own rights. *Singleton*, 428 U.S. at 113–14.

As a result, the U.S. Supreme Court requires a litigant who seeks to assert the rights of another party to demonstrate three interrelated criteria: (1) he must have suffered injury in fact, providing a significantly concrete interest in the outcome of the matter in dispute; (2) he must have a sufficiently close relationship to the party whose rights he is asserting; and (3) there must be a demonstrated bar to the third parties' ability to protect their interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). While these factors have never been applied by a majority of the U.S. Supreme Court to a child's attempt to assert his living parents' interests,[12] they were applied by Justice O'Connor in her concurrence in *Miller v. Albright*. 523 U.S. 420, 445–52 (1998) (O'Connor, J., concurring).

In *Miller*, the Court considered a constitutional challenge to a statute governing the citizenship of nonmarital children born outside of the United States. *Id.* at 424 (majority opinion). One basis for the challenge was that the statute violated Miller's father's right to equal protection of the law. *Id.* Justice O'Connor, concurring in the Court's finding that the challenge was without merit, engaged in an extensive discussion of a child's right to assert the rights of her parent when there was no bar to the parent's involvement in the case at bar or a similar suit. *Id.* at 445–52 (O'Connor, J., concurring). O'Connor applied the *Powers* test to Miller, finding that she met the interest prong because she was denied citizenship under the statute. *Id.* at 447. O'Connor

---

[12] Children were found to have third-party standing to represent the rights of their deceased parents in *Hodel v. Irving*, 481 U.S. 704 (1987); however, unlike the parties in the present case or those in *Miller*, being deceased provides a clear bar to the ability to represent yourself in any action.

also found that Miller met the relationship prong, based on the parent-child relationship. *Id.* However, O'Connor found that Miller lacked third-party standing because she failed to demonstrate any bar to her father's ability to assert his own rights. *Id.* at 448.

Much the same issue is presented in this case. While Doe obviously has an interest in the Ordinance being declared unconstitutional because he will avoid criminal sanctions and has a close relationship with his father, he has failed to demonstrate any bar to his father's ability to challenge the constitutionality of the Ordinance. As a result, Doe has failed the *Powers* test and, under the O'Connor rationale from *Miller* and *Powers*, cannot assert a deprivation of parental liberty interests in this matter.

## IV.

Because Doe has failed to demonstrate that Wendell City Ordinance No. 442 is facially unconstitutional, the decision of the district court is affirmed.

Justices BURDICK, W. JONES, and HORTON, and Justice Pro Tem TROUT CONCUR.

22