# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 48270

| | |
|---|---|
| In the Matter of: John Doe II and John Doe III, Children Under Eighteen (18) Years of Age. | ) ) ) |
| JANE DOE and JOHN DOE I, | ) ) |
| Petitioners-Respondents, | ) ) |
| v. | ) ) ) |
| JOHN DOE (2020-34), | ) ) ) |
| Respondent-Appellant. | ) ) ) |

Filed: January 27, 2021

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David R. Kress, Magistrate.

Judgment terminating parental rights, vacated; and case remanded.

David R. Martinez, Bannock County Public Defender; Jessalyn R. Hopkin, Deputy Public Defender, Pocatello, for appellant.

David K. Penrod, Pocatello, for respondents.

_____

GRATTON, Judge

John Doe appeals from the magistrate court's order terminating Doe's parental rights to his two minor children. Doe argues that the magistrate court erred by concluding (1) that Doe abandoned his children, and (2) it was in the children's best interests for termination. For the reasons set forth below, we vacate the judgment terminating Doe's parental rights and remand this case to the magistrate court.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arose in October 2019, when Jane Doe (Mother) and John Doe I (Stepfather) (collectively "respondents") filed a petition for adoption and termination of Doe's parental rights to his two minor children, G.P. and N.P. The petition alleged that termination was in the

1

children's best interests and was based on four statutory bases: abandonment, neglect, inability to discharge parental responsibilities for a prolonged period, and incarceration for a substantial period of time. Prior to trial, the magistrate court appointed an expert to conduct interviews of the children. Evidence from the interviews was presented at the termination trial, which commenced in May 2020.

The undisputed trial evidence showed that Doe and Mother were previously married and are the biological parents of G.P. and N.P. G.P. was born in December 2008 and N.P. was born in March 2011.[1] In December 2008, Doe was injured while working and was prescribed pain medication for his injury. Doe became addicted to the pain medication and acquired a substance abuse problem. In 2009, Doe sought medical assistance for his addiction but it was unsuccessful. In 2011, soon after the birth of N.P., Doe was incarcerated for possession of methamphetamine and burglary. Shortly thereafter, Doe and Mother separated. Since his first incarceration in 2011, Doe's battle with addiction lead to a significant amount of time incarcerated on various charges. Doe was incarcerated on twelve separate occasions from 2011 to 2019 for crimes such as felony possession of methamphetamine, burglary, driving while intoxicated, and numerous probation violations.

In 2012, Mother and Stepfather began dating and were married in 2014. In 2016, Mother filed a petition to modify her divorce decree and was awarded sole legal custody of the children. Although Mother was awarded sole custody, she allowed visits and even overnights between Doe and the children. At the time of trial in this case, the children resided with Mother, Stepfather, and two other siblings. The children refer to both Doe and Stepfather as "Dad." It is undisputed that Mother and Stepfather provide adequate care for the children and the children are happy and healthy in Mother and Stepfather's care.

At the time of trial, Doe was incarcerated and worked off-site at St. Anthony Work Camp earning $3.04 an hour. Because of his incarceration, Doe was unable to physically visit with the children but he engaged in phone calls with the children every Sunday. Doe also sent the children gifts and letters. However, the phone calls ceased after Mother filed for termination and stopped answering Doe's phone calls. Nonetheless, Doe would inquire about the children with

---

[1] The birthdates and ages of the children are inconsistent in the respondents' brief and in the magistrate court's findings of fact. According to the testimony at trial, the appellant's brief, and portions of the respondents' brief, N.P. was born in 2011.

his Aunt Terry, whom the children referred to as grandma, and the two would plan gifts to give the children for holidays and birthdays.

After trial, the parties filed written closing arguments and the magistrate court issued its order. In its order, the magistrate court set forth numbered findings of fact, the relevant law, and expressed the following conclusions:

> The Petitioners argue that [Doe] has abandoned his sons by failing to maintain a normal parental relationship by a lack of regular personal contact. However, it is necessary to examine this argument in light of [Doe]'s circumstances. It is clear that since 2011, [Doe] has had little contact with his sons. However, it is necessary to exam this lack of contact in light of [Doe]'s circumstances. [Doe] has been incarcerated during much of the minor children's lives. He has had limited contact when not incarcerated, but cumulatively the amount of time spent with the boys in not a normal parent child relationship. In fact, but for the mother keeping phone calls going while he was incarcerated, [Doe] would not know what was going on in the children's lives.
>
> The Court has struggled with these facts and believes the father loves his sons. The Court knows that the boys know who their real dad is. However, the Court finds it difficult to ignore the fact [Doe] has not had a meaningful relationship with his sons. The Court struggles with the question of whether the parent has abandoned the child by having willfully failed to maintain a normal parental relationship, because much of the time the father was incarcerated. However, his inability to beat his addictions has created the overall lack of a normal parent child relationship.
>
> Therefore, it is in the Court's opinion, the circumstances the father finds himself in does amount to clear and convincing and competent evidence that [Doe] has abandoned his sons by willfully failing to maintain a normal parental relationship.
>
> The Court also concludes that the [b]est [i]interests of the child would be promoted by having the continuity and stable relationship they have with their step-father by allowing him to adopt the boys and continue in his positive relationship as their father.

Ultimately, the magistrate court did not address the other statutory basis but terminated Doe's parental rights based on a finding of abandonment and best interests of the children.[2] Doe timely appeals.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d

---

[2]     Following trial, Doe was released and is no longer incarcerated.

341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each

4

statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Doe argues that the magistrate court erred by terminating Doe's parental rights. Specifically, Doe contends that the magistrate court failed to apply the correct clear and convincing evidence standard of proof, and even if the magistrate court applied the correct standard of proof, there was not substantial evidence for a finding that Doe willfully abandoned the children or that termination was in the children's best interests. In response, Mother and Stepfather argue that the magistrate court correctly applied the clear and convincing evidence standard and the magistrate court's decision to terminate Doe's parental rights was based on substantial and competent evidence. As an initial matter, we will address Doe's contention that the magistrate court failed to apply the correct standard of proof.

At the close of trial, the magistrate court stated to the parties "I can tell you both I could probably justify my decision either way based on the record." In addition, in the magistrate court's memorandum decision and order, the court reiterated its struggle writing that it "has struggled with these facts and believes the father loves his sons. . . . The Court struggles with the question of whether the parent has abandoned the child[ren] by having willfully failed to maintain a normal parental relationship, because much of the time the father was incarcerated."

Based on those statements, Doe argues that the magistrate court applied a preponderance of the evidence standard instead of the required clear and convincing evidence standard of proof. Further, Doe contends that,

> The court must be clearly convinced that [Doe] abandoned the minor children, not that it is merely likely [Doe] abandoned the minor children. In this case, even though the magistrate court wrote that it used the clear and convincing burden of proof standard, the magistrate court could not have been clearly convinced if the court could have justified a decision to not terminate the rights of [Doe] using the same evidence.

In response, Mother and Stepfather argue that the magistrate court set forth and applied the proper clear and convincing evidence standard. We agree with Doe.

We conclude that, although the court articulated the appropriate standard, the magistrate court failed to apply the correct clear and convincing evidence standard of proof. Unlike lower standards of proof, the clear and convincing evidence standard requires, after understanding and

5

assessing the evidence, that the trial court not remain in a struggle but rather be clearly convinced that its decision is the correct one. Here the court, by its own statements, was not clearly convinced that Doe abandoned his children. This is evidenced by the fact that the magistrate court articulated multiple times that it could "justify [its] decision either way based upon the record." Thus, the evidence surely did not clearly convince the court as required by the standard. Because the magistrate court was not clearly convinced but nonetheless found that Doe abandoned his children, the magistrate court erred in the application of the appropriate standard of proof.

Next, we will address Doe's argument on the merits of the magistrate court's abandonment finding. Doe argues that there is not substantial and competent evidence to support the magistrate court's conclusion that Doe abandoned the children. In this case, the magistrate court terminated Doe's parental rights on the ground of abandonment, I.C. § 16-2005(5). Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

Here, Doe contends that the magistrate court improperly terminated his parental rights based on its finding that Doe's inability to overcome his addiction, which led to his numerous incarcerations and amounted to willful conduct that created the lack of a normal parental

6

relationship. Doe cites *Doe*, 137 Idaho at 758, 53 P.3d at 341, and argues that despite his various incarcerations, the magistrate court was required to consider Doe's efforts given his circumstances to maintain a normal parental relationship with the children. Doe contends that, despite his incarceration, he always paid what he could in child support, provided the children with gifts and letters while incarcerated, and maintained weekly contact with the children via phone calls while incarcerated.

Mother and Stepfather argue that substantial and competent evidence supports the magistrate court's conclusion that Doe abandoned the children. Specifically, the respondents contend, as the magistrate court concluded, that Doe "willfully abandoned the minor children by chronically giving into his addictions and criminal proclivities." They argue that "Because of his willful choices, [Doe] could not help the minor children with homework, take them on trips, participate in extracurricular activities, attend parent teacher conferences, eat meals together, provide adequate financial support, [or] attend doctor appointments and so much more."

We agree that the magistrate court terminated Doe's parental rights based on its finding that Doe's addiction and criminal acts, which resulted in repeated incarcerations, constituted willful abandonment of his children.[3] However, the Idaho Supreme Court has previously rejected this reasoning. Therefore, we conclude that the magistrate court erred by finding that Doe abandoned his children under I.C. § 16-2002(5).

Unlike other statutory basis of termination, termination on the basis of abandonment requires a finding of willfulness. *See* I.C. § 1.6-2002(5). The Idaho Supreme Court made clear in *Doe I*, 148 Idaho at 716, 228 P.3d at 983 that "For one to willfully fail to do something, he or she must have the ability to do it." In addition, the Court made clear in *Doe* that a trial court cannot rely solely on the fact of a parent's incarceration to justify a finding of abandonment. *Doe*, 137 Idaho at 761-62, 53 P.3d at 344-45. Rather, the trial court must consider what actions the parent took to maintain a normal parental relationship given their circumstances. *Id.*; *Doe I*,

---

[3]     This is evident from the conclusions articulated in the magistrate court's order, which are set forth above, and the magistrate court's findings of fact. The magistrate court's finding of fact thirty-seven is particularly illustrative of this point:

> The Court notes that although much of the lack of relationship was not willful in that the Respondent was incarcerated, while at the same time noting the Respondent['s] continued involvement with the criminal justice system was his choice, even though addictions seem to control his life.

7

148 Idaho at 716, 228 P.3d at 983. Thus, we must examine Doe's efforts to maintain a normal parental relationship given his incarceration and whether Doe could have done more.

First, it is undisputed that while Doe was incarcerated he sent gifts and letters to the children. Doe also maintained weekly contact with the children by engaging in phone calls every Sunday. However, after Mother and Stepfather filed the petition for termination, the phone calls ceased because Mother no longer answered when Doe called. Nonetheless, Doe sought updates regarding the children from his Aunt Terry. It is also undisputed that Doe would send money to his aunt and the two would arrange gifts for the aunt to give the children on behalf of Doe.

In addition to those factors, the Idaho Supreme Court has indicated that an individual's desire to parent their children is a factor that the court can consider when assessing termination on the basis of abandonment. *See Idaho Dep't of Health & Welfare v. Doe*, 154 Idaho 175, 182, 296 P.3d 381, 388 (2013) (affirming termination on the basis of abandonment where father was in prison when the child was born, was released and re-incarcerated on numerous occasions, and father neither "made an effort to establish a parent-child relationship with [the child], nor that he appeared to want to do so, whether in or out of prison"). Here, Doe has a desire to parent his children. This is evidenced by the record as a whole and the magistrate court's finding that the children "know who their real dad is" and that Doe "loves his sons."[4] It appears to be Doe's inability to beat his addictions that has caused Doe problems and not his lack of want to parent his children.

Second, there was no testimony, evidence, or argument advanced that Doe could have done more in any aspect to provide a normal parental relationship given his incarceration. Additionally, the magistrate court did not make one finding that Doe could have done more.[5] Thus, notwithstanding his repeated incarcerations, Doe used the avenues that were available to him to maintain contact with the children; Doe has a desire to parent his children; and there was no indication that he could have done more to provide a normal parental relationship given his circumstances. Accordingly, we conclude that the magistrate court erred by finding that Doe

---

[4] It is also undisputed that when he was not incarcerated, Doe did have some overnight visits with the children. In addition, although he was in arrears, it is undisputed that Doe always paid what he could in child support. Specifically, Doe testified that he always paid some support when not incarcerated and when he was incarcerated he paid half of his $3.04 an hour salary in child support.

[5] Mother and Stepfather argued that Doe's phone calls with the children could have been longer, but did not show how that fact supported a finding of abandonment.

abandoned the children. Because we conclude that the magistrate court erred in its application of standard of proof and in its finding of abandonment, we need not analyze whether termination is in the best interests of the children.

## IV.

## CONCLUSION

The magistrate court erred by failing to apply the appropriate standard of proof and by terminating Doe's parental rights based upon its finding of abandonment. Because the magistrate court did not consider the other basis of termination advanced by Mother and Stepfather, we vacate the magistrate court's judgment terminating Doe's parental rights on the basis of abandonment and remand the case for further proceedings consistent with this opinion.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.