## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 41149

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF PARENTAL RIGHTS JANE (2013-14) DOE. | ) ) ) ) | |
| _____ | ) | |
| JOHN DOE and JANE DOE, | ) ) | |
| Petitioners-Respondents, | ) ) | Boise, September 2013 Term |
| v. | ) ) | 2013 Opinion No. 115 |
| JANE (2013-14) DOE, | ) ) | Filed: November 26, 2013 |
| Respondent-Appellant, | ) ) | Stephen W. Kenyon, Clerk |
| and | ) ) | |
| JOHN DOE 1, | ) ) | |
| Respondent. | ) ) | |
| _____ | ). | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Payette County. Hon. A. Lynne Krogh, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>.

Shane Darrington, Weiser, for respondent-appellant.

Virginia Bond, Payette, for petitioners-respondents.

_____

J. JONES, Justice.

Jane (2013-14) Doe ("Mother") appeals the termination of her parental relationship with her son JLS. Mother left JLS in the care of family members, who then placed JLS with Mr. and Mrs. Doe. The Does petitioned to terminate Mother's parental rights on the grounds of abandonment. Following trial, the magistrate court granted that petition, resulting in this appeal.

1

# I.
## FACTUAL AND PROCEDURAL HISTORY

JLS was born in January 2007. In March 2008, Mother left JLS in the care of his great grandmother ("Great Grandmother"). Mother did not have contact with JLS again until May 2009. In May 2008, Great Grandmother could no longer care for JLS, and JLS then went to live with Mr. and Mrs. Doe. JLS has been in the Does' care and custody since he moved in with them. Since March 2008, Mother has lived in Nampa, Caldwell, and Las Vegas.

In August 2009, the Does sought and were granted guardianship over JLS. As part of that guardianship proceeding, the Does and Mother stipulated to a visitation agreement. After the parties executed the visitation stipulation, Mother had six visits with JLS. Mother has not had contact with JLS since February 27, 2010, her last visit under the stipulation. The parties dispute whether Mother thereafter attempted to have contact with JLS but Mrs. Doe acknowledged that the Does would not have allowed more visits between Mother and JLS after the visitation agreement expired.

The parties were to have a visitation hearing on March 1, 2010, which Mother attempted to vacate on February 27, 2010. None of the parties appeared for the hearing. On May 1, 2012, the Does filed a motion to terminate the parental rights of Mother and JLS' father ("Father"). Father did not respond, and on July 12, 2012, the magistrate judge terminated Father's parental rights by default. Father's parental rights are not at issue in this appeal. Following a two day trial, the magistrate judge terminated Mother's parental rights. Mother now appeals.

# II.
## STANDARD OF REVIEW

The question presented on appeal is whether substantial, competent evidence supports the magistrate court's determination that Mother's failure to maintain a normal parental relationship with JLS was (1) willful and (2) without just cause. This Court's "standard of review in parent-child termination cases is well settled." *In Interest of Crum*, 111 Idaho 407, 408, 725 P.2d 112, 113 (1986). "On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010). Substantial, competent evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Folks v. Moscow Sch. Dist. No. 281*, 129 Idaho 833, 836, 933 P.2d 642, 645 (1997). This Court

must "conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties." *Doe v. Doe*, 150 Idaho at 49, 244 P.3d at 193 (internal quotation marks omitted).

## III.
## DISCUSSION

Every "parent has a fundamental liberty interest in maintaining a relationship with his or her child." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 796 (1982)). Thus, under Idaho Code § 16-2009, grounds for termination of parental rights must be "based upon clear and convincing evidence . . . ." I.C. § 16-2009. "'Clear and convincing evidence is generally understood to be '[e]vidence indicating that the thing to be proved is highly probable or reasonably certain.'" *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006) (quoting *Black's Law Dictionary* 577 (7th ed. 1999)).

Under Idaho Code § 16-2005, a court may terminate a parent-child relationship where it finds that "[t]he parent has abandoned the child" and that termination of parental rights is in the best interests of the child. I.C. § 16-2005(1). A parent has abandoned her child when she "has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact." I.C. § 16-2002(5). A parent's failure "to maintain this relationship without just cause for a period of one (1) year shall constitute prima facie evidence of abandonment . . . ." I.C. § 16-2002(5).

Mother does not dispute the magistrate's findings that she failed to maintain a normal parental relationship with JLS and that terminating her parental rights is in JLS's best interests. Therefore, the Court must determine whether there is substantial, competent evidence in the record to support the magistrate court's decision that the Does showed by clear and convincing evidence both (1) the willfulness of Mother's failure to maintain a normal parental relationship with JLS and (2) Mother's lack of just cause for this failure.

    **1. The magistrate court's decision that Mother's failure to maintain a normal parental relationship with JLS was willful is supported by substantial, competent evidence.**

3

There is substantial, competent evidence to support the magistrate court's finding that Mother willfully failed to maintain a normal parental relationship with JLS because the record shows that Mother had the ability to care for and support JLS, but chose not to do so. The key issue regarding willfulness is whether the parent is capable of maintaining a normal relationship with the child. *Doe I v. Doe II*, 148 Idaho 713, 716, 228 P.3d 980, 983 (2010) ("For one to willfully fail to do something, he or she must have the ability to do it."). For example, in *Doe v. Doe I*, "there was nothing that prevented [the parent] from making some attempt to develop a parent-child relationship" with his daughter, but he nonetheless made "no meaningful effort" to do so. 149 Idaho 392, 397, 234 P.3d 716, 721 (2010). From the time the child was born, the father "never attempted to provide [his child] with gifts, clothing, 'tokens of love' or moral guidance nor has he attempted to offer financial support for [his child]." *Id.* Although the father did eventually succeed in "'getting [his] life in order'" and "'achieved stability,'" he nonetheless limited his efforts on his daughter's behalf to "'pray[ing] for her and her family.'" *Id.* While both this Court and the magistrate judge "commended" the father "for repairing his life," his failure to make "any attempt to create a parent child relationship with [his daughter] constitutes substantial evidence supporting the magistrate court's finding of abandonment." *Id.*

Similarly, in *In re Doe*, a mother had no contact with her child for approximately one and a half years. 146 Idaho 759, 763, 203 P.3d 689, 693 (2009). After this period of no contact, she visited the child four or five times. *Id.* During the relevant time, the mother had been in and out of prison, but "[e]ven after she was placed on probation, [she] had no contact with [her child]." *Id.* at 764, 203 P.3d at 694. Indeed, "[i]t was only after her release from prison and after the Department sought to terminate her parental rights that [the mother] initiated contact with [her child]." *Id.* The Court concluded that the record contained substantial, competent evidence to support the trial court's finding that based on her limited contact with the child, the mother willfully failed to maintain a parental relationship. *Id.*

When, however, a parent is legally prohibited from seeing his children, he does not have the ability to maintain a normal relationship with them, and his failure is therefore not willful. In *Doe I v. Doe II*, this Court held that a father was not capable of maintaining a normal parental relationship with his children because he was legally barred from visiting or even contacting them. 148 Idaho at 718, 228 P.3d at 985. There, the father was in a probation program that

4

prohibited him from having contact with children and, absent his estranged wife's consent, which she refused to give, this prohibition extended to his own children. *Id.* Furthermore, even when not in the program, the father could not contact his children because his visitation rights were suspended by court order and his wife had previously terminated his phone contact. *Id.* Thus, the Court held that the magistrate court's finding that the petitioners failed to prove willfulness by clear and convincing evidence was supported by substantial and competent evidence.

Mother argues that the Does have not established that her failure to maintain a normal parental relationship with JLS was willful. She contends that she visited JLS when permitted to do so under the visitation stipulation and that the Does prohibited her from visiting JLS once the stipulation expired. Additionally, Mother argues that under *Doe I v. Doe II*, she was not under a duty to move the custody court for a modification of the visitation period. Finally, she maintains that even if she did have a duty to attempt to secure visitation, she was precluded from doing so because she was not legally sophisticated and had been told she needed to contact an attorney to secure visitation, but she could not afford counsel.

The magistrate court found that the Does established, by clear and convincing evidence, that Mother abandoned JLS. It stated that Mother left JLS "with her grandmother in March 2008, and had *no contact with him whatsoever* until May 2009, a period in excess of one year. This constitutes prima facie evidence of abandonment." (emphasis in original). As to willfulness, the court held that Mother did have the ability to support and care for JLS, but simply chose not to. The court found as follows:

> Prior to March, 2008, [Mother] had a home with her grandmother, maintained employment, and together they made a home for [JLS]. In March, 2008, [Mother] left that home and embarked on a life of drug abuse, prostitution, and repeated arrests. [Mother's] grandmother bailed her out of jail so that she could come home to [JLS], but she did not. Whatever reasons [Mother] had for the choices she made during that time, they were nonetheless her choices, and those choices did not include any attempt to even communicate with [JLS], let alone maintain any semblance of a parental relationship.

The magistrate court's findings are supported by substantial, competent evidence, which shows that Mother had the ability to visit JLS. Mother does not dispute that she left JLS with

Great Grandmother in March 2008, and had no contact with him until May 2009.[1] When JLS went to live with the Does, Mother was living in Nampa and Caldwell. Even though she was geographically close enough to visit, she chose not to "because [she] was out doing things that [JLS] didn't need to be around." Thus, like the mother in *In re Doe*, Mother failed to have contact with her child for over a year even though she was able to do so.

Furthermore, once the parties entered into the visitation stipulation, Mother's visitation with JLS was sporadic and she took advantage of only a fraction of the days available to her. Mrs. Doe testified, and Mother does not dispute, that Mother visited JLS only six times under the visitation stipulation. Under the stipulation, for the first three months following the commencement of visitation Mother could have visited JLS every Saturday plus one additional day per month. For the fourth and fifth months following the commencement of visitation, Mother could have visited JLS every Saturday plus two additional days per month. For the sixth and seventh months following the commencement of visitation, Mother could have visited JLS every Saturday plus four additional days per month. Thus, like the father in *Doe v. Doe I*, Mother was not prohibited from seeing JLS, but simply failed to make a meaningful effort to develop a parent-child relationship.

Unlike the father in *Doe I v. Doe II*, Mother was not in a program prohibiting her from having contact with her child, nor was she subject to a court order precluding visitation. Although Mother argues she was prohibited from contacting JLS "as soon as her court-granted ability to visit her son expired," she fails to consider that at the conclusion of the seventh month, the parties were to convene for a review hearing. Mother attempted to vacate this review hearing and did not have it put back on the calendar. She contends that under *Doe I v. Doe II*, she did not have a duty to secure visitation through the courts. A reading of *Doe I v. Doe II* simply does not support this assertion, and Mother fails to elaborate on her point. If Mother wished to maintain a relationship with JLS after the visitation stipulation expired, she needed to do so through the courts, an avenue she simply failed to pursue.

---

[1] Mother did not argue that this finding was clearly erroneous in her opening brief, but in oral argument her counsel attempted to raise the issue. This Court will not consider arguments unsupported by "argument and authority in the opening brief." *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010).

Furthermore, Mother argues that she could not afford an attorney and did not have the legal sophistication to secure visitation through the courts. The magistrate court was not persuaded by this argument because it found that

> [Mother] was able to send the court a letter seeking to vacate the March 1, 2010 review hearing after her grandfather's death (and her recent arrest on new drug charges), and could have sent the court a letter asking that it be put back on the calendar, in an effort to assert her parental rights in the guardianship case. Instead she chose to wait another two years until the petition to terminate was filed, at which point she did file an answer, counterclaim, and affidavit in response to the petition, using forms she obtained from the Idaho Supreme Court website, without the assistance of counsel . . . .

Thus, substantial, competent evidence supports the magistrate court's finding that the Does showed by clear and convincing evidence that Mother willfully failed to maintain a normal parental relationship with JLS. Mother failed to contact JLS for over a year, even though at times she was geographically close to him. Even after this abandonment occurred, when she eventually was in contact with him under the visitation stipulation, her visits were sporadic and she took advantage of only a fraction of the visits available to her. Mother's argument that she could not navigate the legal system is unconvincing because she attempted to vacate the guardianship hearing on her own and represented herself in the preliminary stages of the termination suit.

### 2. Substantial, competent evidence supports the magistrate court's decision that Mother did not have just cause for her failure to maintain a normal parental relationship with JLS.

The magistrate court's finding that Mother lacked just cause for her failure to maintain a normal parental relationship with JLS is supported by substantial, competent evidence because the record shows that Mother chose to spend her time and money on pursuits that did not involve JLS. "[E]vidence regarding the financial and logistical difficulties associated with maintaining a relationship with one's child is evidence of just cause that should be adequately considered by the magistrate court." *Doe v. Doe*, 150 Idaho at 501, 244 P.3d at 194.

In a termination proceeding, the petitioner bears the burden of persuasion to show that the respondent parent is without just cause for her failure to maintain a normal relationship with her child. *In re Adoption of Doe*, 143 Idaho at 192, 141 P.3d at 1061. If the petitioner "makes the prima facie case," including a showing that the parent is without just cause, "then the defendant parent holds the burden of production to present evidence of just cause." *Id.* "If the trier of fact

7

finds that there are no valid defenses or 'just causes,' then the petitioning party has met the burden of persuasion." *Id.* Evidence offered to rebut a showing by petitioners that a failure to maintain a normal parental relationship was not willful or was excused by just cause must be relevant to the period of abandonment. For example, in *Doe v. Doe*, the father offered evidence to show that the mother of his children prevented him from visiting them and that his ability to travel was limited. 152 Idaho 77, 80–81, 266 P.3d 1182, 1185–86 (Ct. App. 2011). The Court of Appeals noted, however, that this evidence only related to a small portion of his twenty-two-month absence from his children's lives. *Id.* at 81, 266 P.3d at 1186. Because the evidence did "not explain the lack of contact for the balance of relevant timeframe," the evidence was insufficient to "legitimize his near-total failure to visit or communicate with his children for twenty-two months." *Id.*

Mother argues that the Does failed to satisfy their burden of demonstrating that she lacked just cause for her failure to maintain contact or pay support. Specifically, she contends the Does prevented her from visiting with JLS and that the Does failed to prove she had sufficient resources to pay for JLS's support. Finally, Mother maintains that when she did offer financial support to the Does, they refused to accept it. The Does counter that Mother failed to make a meaningful effort to have a normal parental relationship with JLS, and that this failure was based on her "own, voluntary decision to leave her son behind" so she could pursue a lifestyle not conducive to raising children. They argue that Mother was offered an opportunity to reunite with JLS and simply failed to take it.

The magistrate court did not specifically address just cause, but did consider each of the points Mother raises in her just cause argument. As previously discussed, the magistrate court found that the Does had proved that Mother was capable of caring for and supporting JLS and, although nothing prevented her from doing so, she chose not to maintain a parental relationship.

Mother failed to rebut the Doe's showing because she did not present evidence of just cause. The court stated "[w]hatever reasons [Mother] had for the choices she made . . . they were nonetheless her choices, and those choices did not include any attempt to even communicate with [JLS], let alone maintain any semblance of a parental relationship." Furthermore, the magistrate court did not accept Mother's argument that the Does prevented her from visiting JLS. The court stated that Mother's argument "ignores the fact that the abandonment had

8

occurred well before that time." Additionally, the court found "that for seven months prior" to the Does' refusal to allow visiting, the Does "made extensive efforts to support renewal of the relationship between [JLS] and his mother, including scheduling and rescheduling visits on short notice, waiting when the parents were late, and providing transportation," while Mother only "visited her son a total of six times in seven months, and continued a lifestyle that included drug abuse and multiple arrests." Furthermore, as previously discussed, Mother attempted to justify her failure to maintain contact with JLS prior to May 2009 by explaining that she "was out doing things that [JLS] didn't need to be around." Thus, Mother did not overcome the Does' prima facie case because she failed to present evidence relevant to the time period relating to abandonment.

The issue of whether Mother had the resources to financially support JLS is probably better cast as an issue of willfulness, not just cause, because it goes to the question of whether she was actually capable of support. Regardless, the Does did present evidence that Mother was capable of supporting JLS. Mother testified that she has held various jobs and admitted that she purchased drugs with money she could have used to support JLS. There is substantial, competent evidence in the record to support a finding that Mother's failure to maintain a normal parental relationship with JLS was without just cause.

## IV.
## CONCLUSION

The magistrate court's judgment terminating Mother's parental rights is affirmed. Costs to Respondents.

Chief Justice BURDICK, and Justices EISMANN and HORTON, and Justice Pro Tem SCHROEDER CONCUR.

9