IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 49705

| | | |
|---|---|---|
| In the Matter of: Jane Doe II, A Child Under Eighteen (18) Years of Age. | ) ) | |
| | ) | |
| JOHN DOE I and JANE DOE I, husband and wife, | ) ) | Filed: August 31, 2022 |
| | ) | |
| Petitioners-Respondents, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| v. | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| JOHN DOE (2022-19), | ) | BE CITED AS AUTHORITY |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. David R. Kress, Magistrate.

Judgment terminating parental rights, affirmed.

David R. Martinez, Bannock County Chief Public Defender; Kent V. Reynolds, Assistant Chief Deputy Public Defender, Pocatello, for appellant.

Loveless, Neilsen & Loveless; Benjamin Neilsen, Pocatello, for respondents.

GRATTON, Judge

John Doe (2022-19) appeals from the judgment terminating his parental rights. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

John Doe (Doe) is the father of the child, A.T., in this action. Doe and Jane Doe I (Jane) met in the summer 2016 and subsequently started dating. Jane learned she was pregnant in November 2016 and notified Doe. Doe was subsequently incarcerated November 2016 to December 2017. During Doe's incarceration, A.T. was born in June 2017. Doe was incarcerated again February 2018 to May 2018. Other than a Facebook message between Doe and Jane, there was no contact between A.T. and Doe for the first full year of A.T.'s life. Doe and A.T. had their first visit on A.T.'s first birthday in June 2018. Some daytime visits occurred between Doe and

1

A.T. in 2018. Visitation became regular when Doe (and his wife) helped Jane with childcare every Tuesday evening from March or April 2019 through June or July 2019.[1] Then in July 2019, the magistrate court found that visitation between Doe and A.T. came to a halt. "[Doe] told [Jane], after they had a fight because [Jane] was uncomfortable with him watching the children [] because of his drinking and his arguing in her home, not to call him again, and that he would be filing paperwork to obtain custody." Since July 2019, Doe and A.T. have had no contact. Doe was incarcerated for a third time from December 2019 to April 2021. As the magistrate court found:

> It was testified to by [Jane], and it was unrebutted by [Doe], that he has been completely and totally absent from [A.T.'s] life for 3.6 years of her 4.5 years of life. Even taking into account the period of time he was in prison during her life (2 years and 4 months), that is still 840 days as of the date of Trial.

There was a child support and paternity order entered October 2018. Doe was to pay $169.00 per month in child support and was responsible for 50% of all daycare costs that related to Jane's work or school. Doe admitted at trial he never paid any daycare costs and that as of January 2022 he owed $1,496.80 in child support. Since his release from prison in April 2021, Doe had not paid any child support. Jane testified she received $800.00, which she assumed was from his taxes.

Jane met John Doe I (John) in the fall of 2019, and John has been a parental figure to A.T. since November 2019. Jane and John were eventually married; they filed the petition for adoption and termination on September 20, 2021.

Doe testified that he filled out paperwork for custody, visitation, and child support in August 2019; however, Doe did not file the paperwork until August 2021. Service was attempted September 21, 2021, but was unsuccessful. Jane was served on February 11, 2022, the day of the termination trial. After trial, the magistrate court terminated Doe's parental rights, finding that Doe had both abandoned and neglected A.T. without just cause and it is in A.T.'s best interests to terminate. Doe timely appeals.

---

[1]    In the magistrate court's factual findings it mistakenly said 2018 rather than 2019. This is in direct conflict with the trial transcript and the magistrate court's factual finding that the first visit (which is undisputed) occurred June 9, 2018. It is clear to this Court that 2018 was a typo and the magistrate court meant 2019.

## II.

## STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate's decision must be supported by objectively supportable grounds. *In re Doe*, 143 Idaho at 346, 144 P.3d at 600.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interest and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a

3

prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

## III.

## ANALYSIS

Doe argues the record does not contain clear and convincing evidence to support the magistrate court's findings of abandonment and neglect. Furthermore, Doe argues he has the capacity and ability to provide for A.T., negating the determination that termination is in the child's best interest. Jane and John contend there was sufficient evidence to support the magistrate court's findings. Jane and John also request costs and fees on appeal. We affirm the termination of Doe's parental rights.

### A. Abandonment

Doe argues the magistrate court erred when it found he willfully abandoned A.T. due to circumstances out of his control.

In this case, the magistrate court terminated Doe's parental rights on the ground of abandonment, I.C. § 16-2005(1)(a). Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. The word "or" is used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010).

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The petitioner bears the burden of persuasion to demonstrate that the parent lacks a normal parental relationship with the child and that there is no just cause for the failure to maintain such a relationship. *Id.* If the petitioner is able to meet this burden, the parent then has the burden of production to present evidence of just cause. *Id.* If the magistrate court finds that just cause has not been established, the petitioning party has met its burden of persuasion. *Id.*

4

The key inquiry regarding "willfulness" is whether a parent is capable of maintaining a normal relationship with the child. *Doe v. Doe (2013-14)*, 155 Idaho 505, 508, 314 P.3d 187, 190 (2013). As the Idaho Supreme Court has stated, "[f]or one to willfully fail to do something, he or she must have the ability to do it." *Doe I v. Doe II (2009-02)*, 148 Idaho 713, 716, 228 P.3d 980, 983 (2010).

The magistrate court found Doe had not maintained reasonable contact or provided reasonable support and that his lack of efforts after June 2019 were willful both while incarcerated and in the community. The magistrate court noted Doe was at a severe disadvantage while incarcerated but he still failed to attempt meaningful contact with his child.

Doe argues he did not willfully fail to maintain a normal parental relationship. Doe contends he attempted contact for visitation after June 2019, even while incarcerated, but Jane refused to cooperate which was out of his control.

Jane denies that she inhibited Doe's contact with A.T. Jane explains that ending contact and visitation was initiated by Doe when he texted her:

> I think u should find someone else to watch kids on Tuesday and I'm going to file for visitation until then I don't think we should talk when u find a daycare let me no and I will go there and set up to pay my half until court goodbye.

Jane highlights that Doe never paid for daycare and did not file for visitation until two years later.

When a parent is legally prohibited from seeing and contacting his child, then he does not have the ability to maintain a normal parent child relationship and his abandonment cannot be willful. *Doe I (2009-02)*, 148 Idaho at 718, 228 P.3d at 985. On the other hand, a parent has some degree of responsibility to acquire visitation through the court system when the child's custodian is not allowing contact. *Doe (2013-14)*, 155 Idaho at 509, 314 P.3d at 191. For example, the mother in *Doe (2013-14)*, argued her abandonment was not willful because the visitation schedule had expired and the grandparents would not allow her to visit her child. *Doe (2013-14)*, 155 Idaho at 508-09, 314 P.3d at 190-91. The Idaho Supreme Court dismissed mother's contention that she did not have a duty to secure visitation through the courts and said, "if Mother wished to maintain a relationship with JLS after the visitation stipulation expired, she needed to do so through the courts, an avenue she simply failed to pursue." *Id.* at 509, 314 P.3d at 191.

Substantial and competent evidence supports the finding that Doe willfully failed to maintain a normal parent-child relationship. The text messages show that Doe chose to end contact and said he would file for visitation. The magistrate court found that although Doe attempted to

5

contact Jane later to discuss visitation, no definable request was ever made. The text messages show that Doe texted Jane eight times from July 2019 to his incarceration in December 2019. The messages were along the lines of he missed their daughter and wanted to see her, asked how A.T. was doing, asked if Jane was really that mad, and asked to talk. He did not follow up with a specific date, time, or plan, and this was all after he had told Jane he was going to file for visitation--which could have created a definable visitation schedule. Any lack of response by Jane does not rise to the level of inhibiting Doe from acquiring visitation with his child. Doe was not legally prohibited from seeing his child and clearly understood he could acquire visitation through the courts but did not follow through for two years.

Doe also contends that both during his incarceration from December 2019 to April 2021 and after his release, Jane was uncooperative and he was afraid to continue attempting contact in case she would file for harassment. Even if Doe's fear of harassment charges were valid, the best way to assert his right to visitation would have been through the court system, which would have both avoided harassment charges and required Jane to cooperate. Notably, since his release in April 2021, Doe has failed to pay child support or have any relationship with A.T.

Doe does not challenge the finding of abandonment itself but the finding that the abandonment was willful. There is substantial and competent evidence to support the magistrate court's finding that Doe's abandonment of A.T. was willful. Accordingly, the magistrate court did not err by concluding Doe abandoned A.T. by willfully failing to maintain a normal parental relationship for more than one year without just cause.

**B.    Neglect**

Doe argues the magistrate court erred by finding Doe neglected A.T. by abdicating his parental role.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. A parent can neglect a child by failing to provide proper parental care even if the child's needs are being met by others. As such, the magistrate court may focus solely on Doe's efforts to provide proper parental care for the child. *Interest of Doe* (2020-37), 168 Idaho 74, 79, 479 P.3d 467, 472 (Ct. App. 2021).

6

The magistrate court found Doe had abdicated his parental role by relying upon Jane and John to meet A.T.'s daily financial and nonfinancial needs, and failed to contribute in a meaningful way. The magistrate court found both criminal charges and incarceration were relevant factors to consider under neglect and stated, "the time of incarceration together with the time out of incarceration in which he has neglected the child, cannot be ignored." Lastly, the magistrate court found Doe neglected to support A.T. for the necessities of life stating, "The respondent is behind on child [support] with a very low obligation and has not paid anything since becoming employed and released from prison."[2]

Doe argues the magistrate court erred because it did not evaluate his finances under a totality of the circumstances. Doe again argues that incarceration meant his lack of payment during those times was not willful. Doe argues that between the periods of September 2018 to January 2020, he had paid eighty-one percent of his child support obligation. As of January 2022, he admitted he was $1,496.80 in arrears, but explained that after his last incarceration he changed employment a couple times. During trial, he provided evidence to show he was working with the Department of Health and Welfare to set up a wage payment plan.

Substantial and competent evidence supports the finding that Doe neglected A.T. by abdicating his parental role. Starting from April 2021, Doe personally had not paid any child support.[3] Doe admitted he had never paid his portion of daycare costs ($250.00 per month), even though Doe knew he was responsible for half. While Doe may have paid some child support up to January 2020, he failed to account for his daycare responsibilities and, as noted, failed to pay child support after his last release from incarceration in April 2021. It was reasonable for the magistrate court to find that Doe had failed to provide proper financial support for his child when he had failed to cover even half of his court ordered responsibilities, and Doe failed to provide any support for the last six months prior to trial.

Doe next challenges the magistrate court's termination on the grounds of incarceration. He argues that under I.C. § 16-2005(e), incarceration can only be grounds for termination when the parent is currently incarcerated at the time of termination and will be incarcerated for a lengthy

---

[2]     Doe's child support obligation was $169.00 per month.

[3]     Jane received $800.00, which she speculated was from his taxes. Nevertheless, Doe admitted he had not paid child support since April 2021.

period of time. The magistrate court recognized this and instead noted that incarceration could be considered as a factor under neglect rather than the grounds for termination.

> Thus, incarceration is an independent ground (unique from neglect) for terminating parental rights. However, incarceration may also be considered as one of the many factors constituting neglect. Abundant case law addresses incarceration as a factor in the court's analysis of neglect. Evidence of incarceration is competent evidence of neglect. A parent who is incarcerated for a substantial portion of the child's life cannot provide any amount of parental care and control, subsistence, medical or other care, or control necessary for the child's well-being.

In total, it was undisputed that Doe has missed "3.6 years of her 4.5 years of life." Doe says the time he was incarcerated should not be considered since it inhibited his ability to provide financial support or visit A.T. While this is true, Doe has been incarcerated three times during A.T.'s lifetime. This demonstrates repeated and willful criminal behavior that hindered Doe from providing for A.T. or being a consistent parental figure. Doe cannot leverage his incarceration to provide just cause for his absence from A.T.'s life; especially when the magistrate court found that out of her four and a half years of life, Doe was incarcerated for two years and four months of that time. It was reasonable for the magistrate court to consider incarceration while determining whether Doe had neglected A.T.

Lastly, Doe argues that Jane's conduct was an intervening cause for which his conduct cannot be considered neglectful. Doe points to two precise periods that Jane interfered with his ability to be a parent, December 2017 to February 2018, and June 2019 to December 2019. This Court has already addressed Jane's conduct in the abandonment analysis and concluded that Jane's lack of contact with Doe was not just cause for his lack of parental support. That analysis similarly applies to this neglect analysis.

Overall, sufficient and competent evidence supports the magistrate court's finding that Doe neglected his child. Furthermore, the magistrate court did not err by erroneously applying the wrong ground for termination.

## C.    Best Interest

Doe argues it is not in the best interest of the child to terminate his parental rights because the evidence shows he has changed his behavior, has demonstrated a good past relationship with the child, and has the ability now and in the future to provide for his child. The magistrate court found that termination is in the best interest of A.T. to ensure a sense of finality in her life and because A.T. and Doe did not and do not have a meaningful relationship.

8

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe argues he had a good relationship with his child in the past and "[b]ecause contact between Child and [Doe] has been nonexistent since his release, it is unclear how the relationship may develop if termination does not occur." Doe is unable to argue why termination would affect his current relationship with A.T. because he has failed to have a relationship since June 2019. Additionally, Doe argues he has turned his life around; he has a stable job, is sober, and has the ability to provide for his child financially. Yet again, he is unable to show how termination is not in A.T.'s best interest because Doe has not paid any child support or daycare costs since at least April 2021, if not before; instead, A.T. has her needs met because of Jane and John.

Overall, the evaluation of A.T.'s best interest involves determining how the termination would affect A.T.'s current and future circumstances. Termination at this point would have no substantial effect on A.T. because Doe has no current relationship with her; her life would continue with Jane and John ensuring stability and permanency. The magistrate court did not err when it found that termination of Doe's parental rights would be in the best interest of the child.

**D.      Attorney Fees**

Jane and John request attorney fees and costs on appeal under I.C. § 12-121 and Idaho Appellate Rule 40. Idaho Appellate Rule 40 does not apply to appeals involving termination of parental rights; thus, Jane and John are not entitled to costs under that rule.

A court may award reasonable attorney fees under I.C. § 12-121 "to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." An appeal is generally considered frivolous where it

9

disputes factual findings by a trial court and simply seeks the reweighing of evidence. *Doe I v. Doe (2019-03)*, 166 Idaho 47, 57, 454 P.3d 1130, 1140 (2019). However, the Idaho Supreme Court has held that due to the seriousness of the liberty interest affected in parental termination proceedings, an appeal seeking examination of conflicting evidence is not frivolous in such cases. *Id.* Although Jane and John are the prevailing parties, their request for attorney fees is denied because of the fundamental liberty interest at stake and the existence of some conflicting evidence in the record.

## IV.

## CONCLUSION

Substantial and competent evidence supports the magistrate court's finding that Doe abandoned and neglected the child and that terminating Doe's parental rights is in the child's best interest. Accordingly, we affirm the magistrate court's judgment terminating Doe's parental rights. We decline to award Jane and John attorney fees and costs on appeal.

Judge HUSKEY and Judge BRAILSFORD **CONCUR**.