# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51270

| | | |
|---|---|---|
| In the Matter of: Jane Doe II, a Child Under Eighteen (18) Years of Age. | ) ) | |
| JOHN DOE and JANE DOE I, husband and wife, | ) ) ) | **Filed: February 9, 2024** |
| Petitioners-Respondents, | ) ) | **Melanie Gagnepain, Clerk** |
| v. | ) ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT** |
| JANE DOE (2023-42), | ) ) | **BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. Stacey DePew, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

James Law Office PLLC; Michelle L. Agee, Gooding, for appellant.

Williams, Meservy & Larsen, LLP; James C. Meservy, Jerome, for respondents.

---

GRATTON, Chief Judge

Jane Doe (2023-42) (Mother) appeals from the judgment terminating her parental rights to Jane Doe II (Child). Mother argues the magistrate court erred when it determined that termination of her parental rights is in the best interests of Child. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Child was born in 2018. Child's father has never been identified. The maternal grandparents of Child are John Doe and Jane Doe I (collectively, Grandparents). When Child was born, she tested positive for controlled substances and the Department of Health and Welfare (Department) placed her in Grandparents' custody. Shortly thereafter, Child was returned to Mother's care after Mother completed a voluntary plan. Grandparents continued to assist raising Child, babysitting her during the week and often keeping her overnight.

1

When Child was approximately ten months old, Mother took her to California for three months. Mother did not have stable residency or regular employment during the trip, and Child remained in a car seat most of the time. Upon Mother's return, Grandparents continued to provide care for Child but noticed Mother frequently had a new person staying in the home. The person was possibly violent because Grandparents noticed holes in the walls and other broken items around the apartment. Child remained in Mother's care until the COVID pandemic. At Mother's request, Grandparents went to Mother's apartment for a visit and to give her money, at which time Mother abruptly put Child and some of Child's clothes in Grandparent's car. This was the last contact Mother had with Child. Mother later admitted Child was not safe around the person staying at Mother's home.

Grandparents petitioned for temporary legal guardianship in 2020, asserting a dangerous home environment, which was granted. The dangerous home environment was based on Mother potentially being a victim of domestic violence. Subsequently, Child tested positive for methamphetamine. Mother asserted the methamphetamine test result was due to her Adderall prescription or she blamed the grandmother. Evaluations and assessments determined that Child was behind in certain developmental milestones.[1] Grandparents placed Child in therapies for development and she has since improved. Grandparents denied Mother's attempts to visit and re-establish a relationship with Child. Mother purportedly established a safe home but struggled with substance abuse. Mother did not contact either Child or Grandparents from August 2020 until a text message in February 2022, and then not again until January 2023.

During that period, one of Child's Head Start teachers bonded with Child. The teacher indicated she was interested in being a permanent placement for Child. Grandparents and the teacher arranged time for Child to transition into the teacher's home. The teacher has children of her own and primarily cares for Child, with Grandparents spending some time visiting on the weekends. The teacher filed a petition for adoption.

While Grandparents cared for Child and had both legal guardianship and custody, they filed a petition to terminate Mother's parental rights. The magistrate court ordered an investigation

---

[1] The Grandparents visited a developmental behavioral specialist with Child. Child had neurobehavioral impairments, symptoms of fetal alcohol and drug exposure, and general delay in developmental skills for her age such as: crawling, walking, physical motor skills (large and small), speech, vocabulary, knowledge, understanding, and eye contact.

as required by Idaho Code § 16-2008, and the Department of Health and Welfare submitted the report to the court.[2] The magistrate court did not order mediation or devise a case plan with reunification as a goal. Ultimately, the magistrate court held a hearing and entered judgment terminating Mother's parental rights to Child. Mother timely appeals.

## II.

### STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood

---

[2] The Idaho Code § 16-2008 report indicated Mother failed to maintain a normal parental relationship with Child and, because Mother lacked contact with Child, she was unaware of Child's developmental needs or services.

3

to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Mother argues the magistrate court erred by finding that termination of her parental rights is in the best interests of Child. Specifically, Mother contends she has demonstrated progress in providing safe housing, addressing substance abuse, maintaining stability, attending mental health treatment, and that Grandparents prevented her from seeing Child. Grandparents assert the magistrate court correctly determined termination is in Child's best interests.

The magistrate court terminated Doe's parental rights on the ground of abandonment, I.C. § 16-2005(1)(a). Pursuant to I.C. § 16-2002(5), abandonment occurs when the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. The word "or" is a disjunctive particle used to express an alternative and, thus, the willful failure to maintain a normal parental relationship can be based upon either the failure to pay reasonable support, or the failure to have regular personal contact, or some other failure. *Doe I v. Doe II (2009-02)*, 148 Idaho 713, 715, 228 P.3d 980, 982 (2010). Mother does not challenge the magistrate court's finding of abandonment. Nonetheless, the finding of abandonment involves certain considerations that bear upon Mother's claim that the magistrate court erred in finding termination is in Child's best interests, particularly because Grandparents prevented Mother from interacting with Child and demonstrating proper parental care.

When a parent fails to maintain a normal parental relationship without just cause for a period of one year, prima facie evidence of abandonment exists. I.C. § 16-2002(5). There is no universal standard for what constitutes a normal parental relationship, and whether such a relationship exists depends on the facts and circumstances of each case. *Doe v. Doe*, 150 Idaho 46, 50, 244 P.3d 190, 194 (2010). The key inquiry regarding "willfulness" is whether a parent is capable of maintaining a normal parental relationship with the child. *Doe v. Doe (2013-14)*, 155 Idaho 505, 508, 314 P.3d 187, 190 (2013). As the Idaho Supreme Court has stated, "[f]or one to willfully fail to do something, he or she must have the ability to do it." *Doe I (2009-02)*, 148 Idaho at 716, 228 P.3d at 983. When a parent is legally prohibited from seeing and contacting her child, then she does not have the ability to maintain a normal parent-child relationship and her

4

abandonment cannot be willful. *Id.* at 718, 228 P.3d at 985. However, this is true only so long as the parent does what she can under the circumstances preventing the parent from maintaining a normal parental relationship. *Doe v. Doe (2014-12)*, 157 Idaho 59, 66, 333 P.3d 874, 881 (Ct. App. 2014). Thus, the existence of a guardianship, in and of itself, is not the type of forced absence that will prevent a finding of willful abandonment. *Doe (2014-12)*, 157 Idaho at 66, 333 P.3d at 881. A parent has some degree of responsibility to acquire visitation through the court system if the child's custodian is not allowing contact. *Doe (2013-14)*, 155 Idaho at 509, 314 P.3d at 191 (rejecting a mother's argument that she was prohibited by a guardianship from contacting her child when a court-granted visitation schedule expired and that she was not required to subsequently secure visitation through the courts); *see also Doe (2014-12)*, 157 Idaho at 66, 333 P.3d at 881 (finding guardianship, unlike incarceration or a court order, does not legally prohibit the parent from having contact with a child; "[i]nstead, it simply requires the parent to utilize the courts to establish legally enforceable visitation rights if the guardians are unwilling to allow contact"). If the parent must secure visitation through the courts, then the failure to pursue such avenue indicates a willful failure to maintain a normal parental relationship. *Doe (2013-14)*, 155 Idaho at 508-09, 314 P.3d at 190-91.

Mother contends that termination of her parental rights is not in Child's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). The best interests analysis is an expansive analysis with no set list of factors a court must consider. *Matter of Doe*, 164 Idaho 511, 516, 432 P.3d 60, 65 (2018); *see In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014) (providing non-exhaustive list of factors a court may consider under the I.C. § 16-2005 best interest analysis). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015). Other factors include the parent's ability to change his or her conduct to assume parental responsibilities, whether there is a good relationship between the child and parent, whether the child has improved while in the parent's care, whether

5

the child's needs are being met, and the parent's ability to provide stability and certainty. *Idaho Dep't of Health and Welfare v. Doe I* (2017-21), 163 Idaho 83, 89, 408 P.3d 81, 87 (2017).

Mother argues that she was prevented by Grandparents from participating in Child's life. In addition, she asserts that no reunification efforts or case plan for her to follow to resolve underlying issues relative to her parenting were ordered by the magistrate court. Therefore, according to Mother, she has been denied her constitutional right and the opportunity to demonstrate her parental abilities. Grandparents argue the failure to maintain a normal parental relationship, a stable lifestyle, steady employment, and meeting general obligations of a parent's duties are appropriate considerations. *See In the Int. of Baby Doe*, 130 Idaho 47, 54, 936 P.2d 690, 697 (Ct. App. 1997) (holding father's failure to fulfill obligations to child, maintain stable lifestyle, employment, and home, along with disregard for physical, emotional, and educational needs of child justified finding neglect).[3]

Regarding Mother's claim of being denied visitation with Child, the magistrate court stated, "Although Mother was denied visitation in 2023, she did not even seek visitation between August 2020 and February 2022." Further the magistrate court found:

> Mother clearly knew how to contact her parents and, therefore, her daughter. Even if, for argument's sake, the [Grandparents] refused to allow Mother to see [Child], there was nothing preventing Mother from seeking information as to [Child's] well-being. Mother failed to do even that bare minimum.
> . . . .
>
> There is no evidence in this record that the [Grandparents] were unreasonable. Mother admits that they informed her she could have visitation with [Child], but she would need to be involved in a treatment program. Mother chose not to become involved in a treatment program and instead simply stopped speaking to the [Grandparents].

The magistrate court noted that in 2022 Mother reached out to Grandparents but made no attempt at a normal parent-child relationship. Mother did not ask about Child's well-being or ask to see her. Mother did not attempt to find out how Child was doing in school or her therapies. A guardianship case existed prior to the petition for termination of parental rights. Mother did not

---

[3] The parties are reminded that Idaho Appellate Rule 35(b)(6) states: "The argument should contain the contentions of the respondent with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." Contentions within another section of briefing will not be considered. *See also* Idaho Appellate Rule 35(b)(7) (stating the conclusion section should only recite the precise relief sought).

seek assistance from the court to secure visitation. Substantial and competent evidence in the record supports the magistrate court's findings negating Mother's claims of being prevented from seeing Child.

Mother argues she has demonstrated an ability to improve her issues with controlled substances and has been attending mental health treatments. Mother asserts she is stable. The magistrate court determined Mother did have a job but had exposed Child to drugs, violence, and instability. Additionally, the magistrate court found Mother's explanation of Child testing positive for methamphetamine lacking in credibility and completely nonsensical. The magistrate court found Child was thriving in her environment and Mother's housing situation was unclear. Moreover, Mother did not have a plan as to how she would transition into Child's life and had no concern for the disruption that it would cause. Thus, the magistrate court determined that Mother would cause instability and regression for Child.

The magistrate court found both Grandparents and teacher cared deeply for Child, and she was thriving. Despite being developmentally delayed upon coming into Grandparents' care, Child was going to school with similar-aged children, communicating properly with similar-aged children, and had demonstrated advances in her benchmarks. The magistrate court correctly considered Child's progress and Mother's inability to properly care for Child in finding the best interests of Child would not be served through contact with Mother. *See Idaho Dep't of Health and Welfare v. Doe (2023-27)*, ___ Idaho ___, ___, 538 P.3d 1062, 1070 (Ct. App. 2023) (finding magistrate court did not err considering child's success in current placement, mother failed to create stable home environment, and foster placement provided stability and connections to community). Substantial and competent evidence supports the magistrate court's finding that the termination of Mother's parental rights is in the best interests of Child.

## IV.

## CONCLUSION

The magistrate court's finding that Mother abandoned Child and that termination is in the best interests of Child is supported by substantial and competent evidence in the record. Therefore, the judgment terminating Mother's parental rights is affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.

7